**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 11 2018

JAMES W. McCORMACK, CLERK
.By:_____
                        DEP CLERK

**IN THE UNITED STATES DISCTRICT COURT
EASTERN DISTRICT OF ARKANSAS**

KOKA N. ELGIN, Special Administrator for the
Estate of Pattie Jo Harrison, Deceased                    **PLAINTIFF**

vs.                          Case No: 4:18-cv-915- BSM

SISSIE WILSON, GLENDA ROSE, JOHN DOES 1-10,
each in their Individual and Official Capacities as Employees of
the Independence County Sheriff's Office; SHAWN STEPHENS,
in his Official Capacity as current Sheriff; and, former Sheriff,
STEVE JEFFERY, in his Individual and Official Capacity        **DEFENDANTS**

## COMPLAINT

COMES the Plaintiff, **KOKA N. ELGIN**, by and through counsel, Luther Oneal Sutter,

**SUTTER & GILLHAM, P.L.L.C.**; and, for her Complaint she states:

### PARTIES AND JURISDICTION

1.      Plaintiff, Koka N. Elgin, (hereinafter "Plaintiff"), is the duly appointed Special

Administrator for her mother, Pattie Jo Harrison, who was a resident and citizen of the State of

Arkansas, who was incarcerated by the Independence County Sheriff's office, who brings this on

behalf of herself and the Estate, as well as for her mother's heirs. Defendant, Sissie Wilson, the

Jail Administrator where Plaintiff was incarcerated, is sued in her individual and official capacity

as an employee of the Independence County Sheriff's Department. Defendant, Glenda Rose, the

LPN where Plaintiff was incarcerated, is sued in her individual and official capacity as an

employee of the Independence County Sheriff's Department. John Does 1-10 are individuals,

employees, contractors or agents of the Independence County Sheriff to whom Plaintiff or her

family complained about her health problems from May until September of 2016. Defendant

Shawn Stephens is the current Sheriff of Independence County, elected to office and is sued in

his official capacity; and, his predecessor, Defendant, Steve Jeffrey, the former Sheriff of

This case assigned to District Judge _Miller_
and to Magistrate Judge _Harris_

Independence County, and is sued in his Individual and Official Capacity  This is an action brought for violation of Plaintiff's right to medical care under the ACRA of 1993 and the 14th and 8th Amendments to the United States Constitution.  Accordingly, Plaintiff brings this action as allowed by the ACRA of 1993 and 42 U.S.C.§1983, as well as Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, as amended.  This Court has personal and subject matter jurisdiction, since the Sheriff is a public agency employing more than 50 people and receives federal financial aid.  Venue is proper.  All actions were taken under color of law at the Independence County Sheriff's office and the jail has received and distributed federal funds in 2015 to present.

## GENERAL ALLEGATIONS OF FACTS

1.      Plaintiff's decedent, Pattie Jo Harrison, (hereinafter "Ms. Harrison"), was an inmate at the Independence County Sheriff's jail until she was discharged in September of 2016. She was incarcerated there with severe health problems including COPD and depression, rendering her a person with a disability as defined by the ADA and Section 504 in May of 2016, when she entered the jail.

2.      While she was incarcerated in the Independence County jail, Ms. Harrison was not fed appropriately, nor was she given any appropriate care under the supervision of a physician.  On the contrary, Defendants exercised medical judgment outside their scope of practice, leading to Ms. Harrison's death in November of 2016.

3.      From the beginning of her incarceration in 2016, Ms. Harrison continually complained about pain and the need for her medications and review by a physician, but each Defendant did not make sure Ms. Harrison was evaluated by a physician.

4.   On August 31, 2016, Ms. Harrison complained to Defendants that she could not breathe without her medication and that she needed her medicine.

5.   Defendants did not contact a physician, thereby exhibiting deliberate indifference to Ms. Harrison's serious health condition.

6.   On September 1, 2016, Ms. Harrison requested an appointment with her physician, who was treating her for COPD.   Defendants failed to schedule an appointment timely, leading to her death.

7.   After September 1, 2016, Ms. Harrison continued to complain to Defendants.   As an example, on September 7, 2016, Ms. Harrison complained to Ms. Rose and Ms. Wilson, but they inappropriately discounted Ms. Harrison's complaint and failed to contact a doctor, thereby exhibiting deliberate indifference.   Ms. Harrison continued to complain, eventually filing a grievance with John Doe 1 named P. Radie on September 11, 2016 at 8:50, demanding that she see a physician and complaining that her complaints were being ignored.   Despite this, Defendants waited until the next morning at 10:10 am to respond, leaving Ms. Harrison in excruciating pain and hastening her death.   This delay was in accordance with the Sheriff's custom, policy and training and was a proximate cause Ms. Harrison's death.

8.   Ms. Harrison complained again on September 12, 2016, and Ms. Rose saw her again at 1:00 pm, but then waited another two (2) hours before recommending that Ms. Harrison be taken to the ER.   In effect, Ms. Rose was acting outside the scope of her licensure, but in accordance with the Sheriff's stated policy to save money by avoiding medical expenses using unqualified personnel.

9.      Rather than take Ms. Harrison to the ER and incur liability for bills, Defendants discharged Ms. Harrison in accordance with the Sheriff's policy in September 2016, and her family took her to the ER.

10.     Upon arrival to the ER, Ms. Harrison was admitted in critical condition, where she stayed until she died in November of 2016.

11.     Had Defendants gotten Ms. Harrison appropriate healthcare, Ms. Harrison would not have died.

12.     Each Defendant's delay was deliberately indifferent to Ms. Harrison's medical needs and was a proximate cause of her death.  Indeed, Ms. Harrison was caused unnecessary pain and unnecessary surgical procedures, as well as eventually dying in November of 2016 because of Defendants' actions.

13.     Each Defendant is a policy maker, and the actions taken with respect to Ms. Harrison were pursuant to the Sheriff's policy and custom.  Alternatively, Defendant has failed to train its personnel, which caused Ms. Harrison unnecessary pain.

### COUNT I- /DUE PROCESS/ADA/REHAB ACT

14. Plaintiff realleges the foregoing, as if fully set out herein.

15. Plaintiff had a clearly established right to be appropriate medical care under the Fourteenth and Eighth Amendments to the United States Constitution and the Arkansas Constitution and a right to substantive and procedural Due Process including the right to program access under the ADA.  The conduct alleged herein shocks the conscience and is, at the very least, the result of a failure to train, if not an actual policy choice by the Sheriff.  The conduct represents an informal policy and custom fostered by Defendants and the Sheriff.  Defendants have violated these rights,

16. Had the Sheriff, and his predecessors, complied with Title II of the ADA and REHAB ACT and evaluated his County's incarceration policy vis-à-vis person with mental impairments and physical employment, Ms. Harrison would not have died or experienced the pain she did.

17. Ms. Harrison's rights to be free from cruel and unusual punishment and Due Process have been violated, as well as her right to be free from disability discrimination under the ACRA and Equal Protection Clause. As well as her right to program access under Title II and Section 504.

18. Defendants were not properly trained in the provision of medical care, handling medical complaints, or the duty to intervene in order to comply with the ADA and the state and federal Constitutions, nor did the Sheriff implement appropriate policies to prevent the use of reasonably foreseeable force. The John Does failed to intervene.

19. As direct and proximate cause of the Sheriff's failure to train, on provision of medical care, handling regarding medical care, Plaintiff and Ms. Harrison, as well as Ms. Harrison's heirs, each has suffered severe mental and emotional distress, experienced excessive mental or physical pain, lost relationship, lost enjoyment of life, and incurred other expenses in an amount to be proven at trial and recoverable for wrongful death.

20. Plaintiff pleads for punitive damages against the officers in their individual capacities under federal law; and, pleads for punitive damages against the officers in both their official and personal capacities under the ACRA of 1993.

## COUNT II- ADA/REHAB ACT

21. Plaintiff realleges the foregoing against the official capacity Defendants only as if fully set out herein.

22.   Defendants had a duty to ensure that Ms. Harrison, and other individuals, had program access under Title of the ADA and REHAB ACT.   But they failed by refusing to enact policies that recognized that persons with disabilities have impairments that require regular monitoring by a physician, not an LPN.   On July 12, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., establishing the most important civil rights for persons with disability in our country's history.

23.   The Congressional statutory findings include:

a.   Some 43,000,000 have one or more physical or mental disabilities....;

b.   Historically, society has tended to isolate and segregate individuals with disabilities and, despite some improvements, some forms of discrimination against individuals with disabilities continue to be a continuous and pervasive social problem;

24.   Congress gave public entities over a decade to self-evaluate and to implement the Act. The effective date was January 26, 1992.

25.   Nevertheless, Defendants failed to properly self-evaluate and failed to make those changes in order to assure program access as herein alleged.

26.   Title II of the ADA covers public entities.  42 U.S.C. § 12181, et seq.  Specifically, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. The ADA defines "public entity" in relevant part as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government," 42 U.S.C. § 12131(1)(A)-(B), and the Supreme Court has found that "[s]tate prisons fall squarely within the [statute's] definition of public entity."

*Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, 210, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1952) (internal quotations and citations omitted). Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Both the ADA and the Rehabilitation Act have been found to apply to services, programs and activities for detainees.

27. Defendant Sheriff is a public entity within the meaning of Title II and Section 504 because the Sheriff receives federal financial aid.

28. The placement was not appropriate, and Defendants failed to take any steps to evaluate Ms. Harrison. Namely, Plaintiff alleges that those policies and practices include, but are not limited to, the following:

> Failure to conduct appropriate and complete assessments;
> Failure to create and implement appropriate health treatment plans;
> Failure to follow clinical judgments and recommendations;
> Failure to promptly evaluate and transfer inmates to a hospital who are gravely disabled and at risk of serious harm;
> Failure to implement appropriate emergency treatment policies;
> Failure to provide appropriate staffing and training at the Jail to provide minimally adequate treatment for seriously ill inmates.

These failures are a result of Defendant's failure to self-evaluate and reviews its policies 28 CFR 35.130. The policy of avoiding physician appointments to save medical expenses has a disparate impact upon persons with disabilities

29. As alleged above, the Defendant's facilities are not in compliance with the ADA, codified at 42 U.S.C., § 12101, et seq. and the federal regulations promulgated pursuant to the ADA

30. Defendant has failed to evaluate its policies and procedures in order to eliminate those policies and procedures which discriminate unfairly against Ms. Harrison and to provide Ms.

Harrison program access. Inmates without disabilities were not endangered by these policies, but Ms. Harrison was.

31. Ms. Harrison, given her mental and physical impairments such as depression and COPD, had a disability which substantially impairs one or more major life activities such as breathing and concentrating and was an otherwise qualified individual, within the meaning of the ADA and Section 504.

32. By failing to make those changes which are readily achievable, the Defendant intentionally discriminated against Ms. Harrison in violation of 42 USC 12112.

33. As a result of the failure to self-evaluate, Ms. Harrison was denied her right to program access, causing her unnecessary pain and suffering and eventually lead to her death.

**WHEREFORE,** Plaintiff prays for a declaratory judgment that Defendants' actions have violated Plaintiff's rights granted to her under the Fourteenth and 8th Amendments to the United States Constitution, the ADA, Section 504, and the Arkansas Constitution, for appropriate compensatory and punitive damages against Defendants exceeding one million dollars, for reasonable attorneys' fees, for costs, for a jury trial and for all other proper relief.

Respectfully submitted,

**SUTTER & GILLHAM, P.L.L.C.**
Attorneys at Law
P.O. Box 2012
Benton, AR 72018
501-315-1910  Office
501-315-1916  Facsimile
Attorney for the Plaintiff

By:     */s/ Luther Oneal Sutter*
Luther Oneal Sutter, AR Bar No. 95031
luthersutter.law@gmail.com